GERARD FOX LAW P.C.
GERARD P. FOX (SBN 151649)
gfox@gerardfoxlaw.com
MARINA V. BOGORAD (SBN 217524)
mbogorad@gerardfoxlaw.com
1880 Century Park East, Suite 1410
Los Angeles, CA 90067
Tel: (310) 441-0500
Fax: (310) 441-4447

Attorneys for Defendants
McCandless Group, LLC and Nicholas McCandless

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Digital Marketing Advisors, | ) CASE NO.: 2:21-cv-6888 |
| Plaintiff, | ) The Honorable Andre Birotte Jr. |
| v. | ) (1) DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES, OR, IN THE ALTERNATIVE, FOR SANCTIONS PURSUANT TO C.D. CAL. LOCAL RULES 11-9 AND 83-7, 28 U.S.C. § 1927 AND/OR THE COURT'S INHERENT AUTHORITY; and |
| McCandless Group, LLC, *et al.*, | |
| Defendants. | |
| | ) (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF. |
| | ) FILED UNDER SEPARATE COVER: |
| | ) (3) DECLARATIONS OF GERARD P. FOX, MARINA V. BOGORAD AND PRACHI AJMERA; and |
| | ) (4) PROPOSED ORDER. |
| | ) Date:        June 17, 2022 |
| | ) Time:        10:00 a.m. |
| | ) Courtroom: 7B |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2022 at 10 a.m., or as soon thereafter as the matter may be heard, in the above entitled court, located at Courtroom 7B, 350 West First Street, Los Angeles, California 90012, Defendants McCandless Group LLC and Nicholas McCandless ("Defendants") will and hereby do move this Court for an Order: (1) awarding Defendants' attorneys' fees, in the amount of at least $82,486.40 under Section 505 of the Copyright Act, 17 U.S.C. §§ 101 *et seq*., based on Defendants' prevailing under the statute, or, in the alternative, (2) imposing upon Plaintiff and its counsel, Zhen Law Firm, sanctions in the amount of Defendants' attorneys' fees incurred in the amount set forth above pursuant to Local Rules 11-9 and 83-7, 28 U.S.C. § 1927 and/or the Court's inherent authority for asserting without any reasonable basis and vexatiously prosecuting the claims in this action, including their presentation of Plaintiff's baseless opposition to Defendants' motion to dismiss.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities and Declarations of Gerard P. Fox, Marina V. Bogorad and Prachi Ajmera, as well as all pleadings and papers on file herein and all other such evidence or argument as may be submitted to the Court at or prior to the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which was initiated by email communication setting forth the grounds for this Motion on April 29, 2022 and, in accordance with availability of Plaintiff's counsel, was held on May 4, 2022.

DATED: May 6, 2022                                    GERARD FOX LAW P.C.

                                                     /s/ *Marina Bogorad*
                                                     GERARD P. FOX
                                                     MARINA V. BOGORAD
                                                     Attorneys for Defendants

# TABLE OF CONTENTS

I.    RELEVANT BACKGROUND ..........................................................................2

II.   ARGUMENT ...............................................................................................7

    A.   As the Prevailing Parties under the Copyright Act, Defendants Should Be Awarded Their Attorney's Fees. ...............................7

        1.   Applicable Standards ..................................................7

        2.   Awarding Defendants Their Attorneys' Fees Will Serve the Purposes of the Copyright Act ...............................10

        3.   The Degree of Success and the Baseless Nature of Plaintiff's Claims Weigh Heavily in Support of the Requested Award ....................................................11

        4.   The Other *Fogerty* Factors Also Support the Requested Award ....................................................................13

    B.   The Amount of the Requested Fees is Reasonable. .............................15

    C.   Alternatively, Plaintiff's Baseless Venture to This Court is Sanctionable. ...........................................................17

III.  CONCLUSION ............................................................................................22

i

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
  2013 WL 3460707 (N.D. Cal. July 9, 2013) ...................................................4

*Amaretto Rancho Breedables, LLC v. Ozimals, Inc.*,
  2011 WL 2690437 (N.D. Cal. July 8, 2011) ...................................................4

*B.K.B. v. Maui Police Dep't*,
  276 F.3d 1091 (9th Cir. 2002) ...................................................19

*Beyond Blond Prods., LLC v. Heldman*,
  2020 WL 4772796 (C.D. Cal. Aug. 17, 2020) ...................................................4

*Blixseth v. Yellowstone Mountain Club, LLC*,
  796 F.3d 1004 (9th Cir. 2015) ...................................................18

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
  2014 WL 5438532 (S.D. Cal. Oct. 24, 2014) ...................................................15

*BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*,
  103 F. Supp. 3d 1242 (W.D. Wash. 2015) ...................................................12

*Chalfy v. Turoff*,
  804 F.2d 20 (2d Cir. 1986) ...................................................21

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................... 17, 18

*China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*,
  2003 WL 21982477 (C.D. Cal. Mar. 12, 2003) ...................................................19

*Complex Media, Inc. v. X17, Inc.*,
  2019 WL 2896117 (C.D. Cal. Mar. 4, 2019) ...................................................4

*Cook-Benjamin v. MHM Corr. Servs., Inc.*,
  571 F. App'x 944 (11th Cir. 2014) ................................................... 19, 21

*Cove USA LLC v. No Bad Days Enterprises, Inc.*,
  2021 WL 3568251 (C.D. Cal. July 2, 2021) ...................................................4

*Discovery Communications, Inc., v. Animal Planet, Inc.*,
  172 F. Supp. 2d 1282 (C.D. Cal. 2001) ...................................................15

*Disney Enterprises, Inc. v. VidAngel Inc.*,
  2017 WL 6819882 (C.D. Cal. Oct. 5, 2017) ................................................... 18, 22

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ...................................................9

*Fantasy, Inc. v. Fogerty*,
  94 F.3d 553 (9th Cir. 1996) ................................................... passim

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)................................................................................9

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) ........................................... 17, 18, 19

*Fogerty v. Fantasy*,
   510 U.S. 517 (1994)..............................................................................8, 9

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   2015 WL 5601853 (D. Haw. Sept. 23, 2015)..................................13

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
   925 F.3d 1140 (9th Cir. 2019) ..........................................................10

*Goldberg v. Cameron*,
   2011 WL 3515899 (N.D. Cal. Aug. 11, 2011) ..............................11

*Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*,
   2014 WL 3381416 (N.D. Cal. July 10, 2014) ...............................22

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...............................................................................15

*Hicks v. Arthur*,
   891 F. Supp. 213 (E.D. Pa. 1995)....................................................20

*Historical Research v. Carbal*,
   80 F.3d 377 (9th Cir.1996) ..................................................................8

*Holgate v. Baldwin*,
   425 F.3d 671 (9th Cir. 2005) ..................................................... 18, 20

*In re Girardi*,
   611 F.3d 1027 (9th Cir. 2010) ...........................................................19

*In re Itel Sec. Litig.*,
   791 F.2d 672 (9th Cir. 1986) ..............................................................18

*Ingram v. Oroudjian*,
   647 F.3d 925 (9th Cir. 2011) ..............................................................12

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014) ...........................................................10

*Intel Corp. v. Terabyte Int'l, Inc.*,
   6 F.3d 614 (9th Cir. 1993) ......................................... 15, 16, 17

*Karam v. City of Burbank*,
   352 F.3d 1188 (9th Cir. 2003) ...........................................................13

*Kerr v. Screen Actors Guild, Inc.*,
   526 F. 2d 67 (9th Cir. 1975) ...............................................................16

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016)..................................................................................8

*Lenz v. Universal Music Corp.*,
    2010 WL 702466 (N.D. Cal. Feb. 25, 2010)............................................8

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993) ...........................................................20

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
    149 F.3d 987 (9th Cir. 1998) .........................................................12

*Mattel, Inc. v. Mattel De Mexico S.A. de C.V.*,
    705 F.3d 1108 (9th Cir. 2013) .................................................. 10, 12

*Microsoft Corp. v. Softwareau.com*,
    2016 WL 7647682 (C.D. Cal. June 22, 2016)........................................10

*Mone v. Comm'r*,
    774 F.2d 570 (2d Cir. 1985) .........................................................20

*Neitzke v. Williams*,
    490 U.S. 319 (1989)..................................................................13

*Newborn v. Yahoo! Inc.*,
    437 F. Supp. 2d 1 (D.D.C. 2006)......................................................8

*Online Policy Grp. v. Diebold, Inc.*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004)................................................4

*Operating Eng'rs Pension Trust v. G.C. Wallace, Inc.*,
    159 F.R.D. 536 (D. Nev. 1994) .......................................................19

*Ouellette v. Viacom Int'l, Inc.*,
    2012 WL 1435703 (D. Mont. Apr. 25, 2012) .................................. 1, 10, 11

*Perfect 10, Inc. v. Giganews, Inc.*,
    2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ................................... passim

*Prim v. Peatco Ltd. L.P.*,
    1994 WL 570754 (S.D.N.Y. Oct. 17, 1994)............................................20

*Quiroga v. Hasbro, Inc.*,
    934 F.2d 497 (3d Cir. 1991) .........................................................21

*R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*,
    2014 WL 4722487 (D. Ariz. Sept. 23, 2014)..........................................20

*Roadway Exp., Inc. v. Piper*,
    447 U.S. 752 (1980)..................................................................18

*Rossi v. Motion Picture Ass'n of Am., Inc.*,
    391 F.3d 1000 (9th Cir. 2004) ............................................... passim

*Smith & Green Corp. v. Trustees of Const. Indus. & Laborers Health & Welfare Tr.*,
    244 F. Supp. 2d 1098 (D. Nev. 2003) ................................................20

*SOFA Entm't, Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013).......................................................13

iv

*Stardock Sys., Inc. v. Reiche*,
  2019 WL 8333514 (N.D. Cal. May 14, 2019)...................................................4

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017) ............................................................................19

*Tine Bak LLC v. Selkatz, Inc.*,
  2020 WL 9074806 (C.D. Cal. Nov. 30, 2020) ...................................................4


Statutes

28 U.S.C. § 1927 ............................................................................................... passim

Cal. Civ. Proc. Code § 425.16 ...................................................................................4

Copyright Act 17 U.S.C. § 505...........................................................................7, 15

Digital Millennium Copyright Act, 17 U.S.C. § 512.................................... 1, 3, 4, 9


Rules

CACD, L. R. 11-9 .................................................................................... 1, 18, 21

CACD, L. R. 83-7 ......................................................................................... 18, 21

Fed. R. Civ. P. 11 ....................................................................................... 1, 11, 17

This Court already awarded defensive attorney's fees to discourage serial plaintiffs under the Copyright Act, such as Plaintiff here, holding that such an award "would discourage serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs in order to drive a settlement." *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *12 (C.D. Cal. Mar. 24, 2015) (Birotte Jr., J.), *aff'd*, 847 F.3d 657 (9th Cir. 2017).[1]   This is the perfect summary of Plaintiff's objectives here.  Plaintiff knew it had no case.  And so did its counsel.  The complaint did not even attempt to set forth any facts required to show the necessary intent to issue a false takedown notice under the Digital Millennium Copyright Act, 17 U.S.C. § 512(f) ("DMCA"), let alone satisfy the "high bar" of factual pleading required by the Ninth Circuit for these type of claims.   Ironically, this tasking pleading standard exists precisely to prevent the type of nuisance suits that this case exemplifies, since it was set to protect "copyright owners such as [defendant that] could face limitless lawsuits just by policing its copyrighted material on the internet." *Ouellette v. Viacom Int'l, Inc.*, 2012 WL 1435703, at *1-3 (D. Mont. Apr. 25, 2012), *aff'd*, 671 F. App'x 972 (9th Cir. 2016), citing *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004-05 (9th Cir. 2004).

The fact that Plaintiff never had the necessary facts in the first place is evidenced by its reaction to the Court's ruling on Defendants' motion to dismiss.  (*See* Dkt No. 48 ("Dismissal Order").)  Once this Court agreed that Plaintiff failed to present "sufficient facts showing that Defendants ***subjectively, actually knew*** that they misrepresented their rights" (as well as confirmed that Plaintiff pleaded itself out of any reliance or damages by setting forth links showing that its ban from Reddit had nothing to do with Defendants' notices), it warned that Plaintiff (and presumably its counsel) should keep Rule 11 in mind when analyzing whether to pursue further amendment.  (*Id.* at 4-6.)

---

[1]   All internal alterations, quotation marks, footnotes and citations herein are omitted, and all emphasis is added unless otherwise noted.

Plaintiff's reaction? It ran for the hills.  Yet this was not without threatening Defendants with more baseless suits in private communications, as discussed further below.  As such, Plaintiff embodies the very sort of a serial plaintiff this Court found objectionable in *Perfect 10*, and unless this Court makes Plaintiff's wallet answer for the past nine months of useless and baseless litigation it imposed on Defendants here, Plaintiff is prepared to continue in its vexatious ways, imposing further burdens not only on these Defendants (who did nothing more than police their rights, as specifically provided under the statute) but also on the judicial system as a whole.  In fact, as shown further below, it would actually frustrate the very purposes of the DMCA to refuse the requested award of attorney's fees here.

Even aside from the "the pivotal criterion" of furthering the purposes of the statute,[2] which Plaintiff specifically chose as the vehicle for its venture into this Court, Plaintiff's claim under the DMCA (along with its voluntarily dismissed state law claims that rode on the coattails of the federal statute) was frivolous and objectively unreasonable.  Those and all other *Fogerty* factors thus cut in favor of awarding Defendants their attorney's fees, as does the degree of Defendants' success—judgment on the merits.  *Fogerty*, 94 F.3d at 555.  Accordingly, Defendants should be awarded their attorney's fees for the successful defense of this case.  In the alternative, given the apparent lack of any reasonable inquiries into the merits of the asserted claims, the continued prosecution of the action at bar is sanctionable, including Plaintiff's entirely groundless opposition to Defendants' motion to dismiss the federal claim.

## I.    RELEVANT BACKGROUND

**<u>This Litigation, the Meet and Confer Efforts and Three Complaints.</u>**   On August 26, 2021, Plaintiff Digital Marketing Advisors ("DMA") brought this action against Defendants Nicholas McCandless and his company, McCandless Group, LLC (collectively, Defendants") on the basis that Defendants allegedly issued supposedly

---

[2]   *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996) ("*Fogerty*").

1  "false" "takedown" notices to "Reddit" (which Plaintiff describes as "an online social
2  media site where the users can post content and share comments and feedback" (SAC
3  at ¶ 11)).  This, however, was not the first time Plaintiff initiated litigation for the same
4  alleged conduct.  Indeed, in January 2021, DMA commenced three actions in small
5  claims court against McCandless Group for the alleged tortious interference regarding
6  three models, which were apparently based on the same takedown notices.  *See* LASC
7  Case Nos. 21SMSC00017, 21SMSC00018 & 21SMSC00019.  Although Plaintiff had
8  succeeded on those claims in May 2021,[3] since defendant could not be represented by
9  counsel in those proceedings and thus could not successfully articulate the dispositive
10 defenses that eventually compelled Plaintiff to drop all the state law claims from the
11 suit at bar (*see infra* at n.4), DMA included these *same* already litigated claims in this
12 action, along with the alleged violations of Section 512(f) of the DMCA, as well as
13 additional claims for intentional interference with contractual relationship, intentional
14 interference with prospective economic advantage, negligent interference with
15 prospective economic advantage, and unfair competition.  (*See* Dkt. No. 1.)

16      Accordingly, the initial meet and confer process was focused not only on the
17 pleading deficiencies but also on claim preclusion.  (*See* Declaration of Gerard P. Fox
18 ("Fox Decl.") at ¶ 4.)  In response to Defendants' meet and confer efforts, however,
19 Plaintiff filed an amended complaint that still included the already-litigated claims.  (*See*
20 Dkt. No. 22.)  Accordingly, Defendants were compelled to meet and confer further,
21 pointing out that the already-litigated claims still remained, as well as continuing to
22 insist that Plaintiff failed to state a claim under the statute because it lacked any facts to
23 support the knowing element of the statutory claim.  (*See* Declaration of Prachi Ajmera
24 at ¶ 5.)  In response, Plaintiff took its time to decide what to do, thus compelling
25 Defendants to prepare motion to dismiss papers—only to have Plaintiff ask for another

26
27 [3]  Those judgments are currently being appealed, with all the three appeals scheduled
28 to be heard in August.

3

amendment four days before Defendants' response to the complaint was due.  (*See id.* at ¶ 6.)  This resulted in Plaintiffs' SAC, which now contained only two state law claims (intentional interference with prospective economic advantage and unfair competition), as well as its still inadequately pleaded statutory claim under the DMCA.  (*See generally* SAC.)

Further meet and confer efforts ensued, in which Defendants provided Plaintiff with the authorities for their (continuously evolving due to Plaintiff's serial amendments) motion to dismiss and thus raised the issue of preemption and preclusion of Plaintiff's state law claims under the California anti-SLAPP statute.  (*See* Declaration of Marina V. Bogorad ("Bogorad Decl.") at ¶ 6.)[4]  In response, on February 10, 2022,

---

[4]  On preemption, *see Beyond Blond Prods., LLC v. Heldman*, 2020 WL 4772796, at *3 (C.D. Cal. Aug. 17, 2020) ("District courts in this circuit 'have found that the DMCA preempts state law claims arising out of the submission of infringement notices.'"), citing *Stardock Sys., Inc. v. Reiche*, 2019 WL 8333514, at *4 (N.D. Cal. May 14, 2019) (collecting cases); *Tine Bak LLC v. Selkatz, Inc.*, 2020 WL 9074806, at *5 (C.D. Cal. Nov. 30, 2020) ("The Court agrees with Defendant that Plaintiff's tortious interference claim is preempted by federal law.  'Numerous courts within the 9th Circuit have held that 17 U.S.C. § 512(f) preempts state law claims based on DMCA takedown notifications.'"), citing, *inter alia*, *Complex Media, Inc. v. X17, Inc.*, 2019 WL 2896117, at *5-6 (C.D. Cal. Mar. 4, 2019) (collecting cases), and *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205-06 (N.D. Cal. 2004) ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law."); *Amaretto Rancho Breedables, LLC v. Ozimals, Inc.*, 2011 WL 2690437, at *4 (N.D. Cal. July 8, 2011) ("[A] DMCA Takedown Notification is a creature of a federal statutory regime," and "that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification.").  On application of the California anti-SLAPP statute, *see Cove USA LLC v. No Bad Days Enterprises, Inc.*, 2021 WL 3568251, at *3-4 (C.D. Cal. July 2, 2021) (explaining that takedown notices qualify as pre-litigation conduct thus triggering the litigation privilege, which falls within the anti-SLAPP statute's protections), citing, *inter alia*, Cal. Civ. Proc. Code § 425.16(e); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 2013 WL 3460707, at *3 n.2 (N.D. Cal. July 9, 2013) ("As this Court already held, the DMCA Notices … are protected by the litigation privilege and are non-actionable in and of themselves.").

Plaintiff voluntarily dropped its two remaining state law claims.  (*See* Dkt. No. 34.)
Accordingly, Defendants proceeded to move to dismiss the only remaining claim;
namely, the DMCA claim.  (*See* Dkt. No. 35.)

As of that time, the conclusory and factually unsupported allegations that
Defendants' takedown notices were somehow "false" became the entirety of Plaintiff's
case.  Indeed, there was nothing beyond those conclusory assertions to be found in
Plaintiff's SAC—which, in itself, is remarkable given the multiple rounds of the parties'
meet and confer sessions that had already compelled Plaintiff to restate its claims twice
and wilted down its already terse complaint to a single claim.  Cobbled together from
the limited allegations, the background facts appeared to stand as follows: sometime in
2020, Plaintiff entered into Content Creator Agreement with a social media personality
and/or model named Ellie-Jean C. (hereinafter "Model").  (*See* SAC at ¶ 8; *see also*
Dismissal Order at 1-2 (summarizing the relevant allegations).)  Plaintiff claimed that
Defendants issued a "fraudulent" or "willfully blind[]" takedown notice to Reddit
regarding the Model's photograph in January 2021.  (SAC at ¶¶ 10-11, 17 & 23.)
Plaintiff did not explain why it was "fraudulent"—all Plaintiff claimed was that it was
Plaintiff that owned the copyright to the picture.  (*See id*. at ¶ 8.)  Plaintiff never pleaded
any facts even suggesting that Defendants actually knew it.  Indeed, the actual January
2021 takedown notice merely asserted that the picture at issue was ***authored*** by
Defendants.  (*See* Dkt. No. 35-1 at 8.)  Plaintiff never pleaded what Defendants actually
said in the notice and thus set no facts as to the required element of Defendants' "actual
knowledge" that the statement was somehow incorrect.

Additionally, there were also allegations about Defendants issuing similar notices
to Reddit in August 2021 as to "one of the Models" but the only such "Model" defined
in the SAC is Ellie-Jean C.  Indeed, there were no allegations as to any other "Models"
or Plaintiff's relationship with any other Model, and it was only from the alleged
takedown URL link itself that the name of the model at issue in the August 2021
takedown notices could even be ascertained (*see* SAC at ¶ 17 (setting forth URLs for

5

takedown notices concerning "Ellie the Emress"); *see also* Dismissal Order at 2 n.1 (noting this deficiency)).

Finally, Plaintiff also contended that Defendants issued a similar notice to the Hostwinds internet service provider in July 2021.  (*See* SAC at ¶ 14.)  This, however, appeared to be an errand allegation that Plaintiff forgot to take out during its multiple amendments.  (*See* Dismissal Order at 2 n.1 (also noting this deficiency).)  Indeed, there were no claims stemming from this allegation, as Plaintiff's entire complaint was limited to claiming damages stemming from its removal from Reddit, and there were no allegations connecting Reddit to Hostwinds.

This was the entirety of the alleged wrongful behavior.  As for the alleged damages, Plaintiff only offered its belief that it was due to these takedown notices that it was banned from Reddit.  (*See* SAC at ¶ 20.)  One was left guessing how the alleged July notice to Hostwinds was even connected with Reddit—Plaintiff never shed light on this issue and left it unexplained.  Moreover, when one actually opened the three URLs as set forth in the SAC, two of them led to the following message on Reddit's site: "This subreddit was banned due to a violation of Reddit's rules against sexual or suggestive content involving minors or someone who appears to be a minor." https://www.reddit.com/r/ShoreThang/comments/lxdkty/ellie_the_empress/ (as cited in SAC at ¶ 17 (the first link for the alleged August notices) and accessed on Jan. 24, 2022; the same message appeared when opening the URL link for the alleged January notice (*see* SAC at ¶ 11)).[5]

**Plaintiff's Behind-the-Scenes Communications Reveal the True Purpose Behind This Lawsuit**.  As Defendants have already advised this Court, shortly after

---

[5]   The second link set forth for the alleged August notices led to the "no such user found" message.  (*See* SAC at ¶ 17, citing https://www.reddit.com/user/Zurbina/comments/lxdj9j/ellie_the_empress/, as accessed on Jan. 24, 2022.)  Tellingly, Defendants could locate no notices issued to Reddit in August 2021 in their records.  (*See* Dkt. No. 35-1 at ¶ 6.)

Defendants spelled out doomsday for Plaintiff's only remaining claim in their motion to dismiss, Plaintiff took to communicating with Mr. McCandless directly, threatening to drop its only remaining claim in favor of bringing **seven more** claims back in small claims court.  (*See* Dkt. No. 43-2 (2/11/22 email from Zachary Elliot, Plaintiff's principal), *see also* Dkt. Nos. 43 at 3:2-12 & 43-1 at ¶ 2.)  Notably, this was right ***after*** Defendants raised preemption and anti-SLAPP as precluding all of Plaintiff's state law claims, and, in response, Plaintiff dropped all of its state law claims from this lawsuit.

But Plaintiff did not stop there.  Recently, shortly after this Court dismissed Plaintiff's sole remaining claim as deficient (albeit with one more opportunity to amend), Plaintiff again communicated with Mr. McCandless, expressly stating: "I'm just going to keep suing you."  (Fox Decl., Ex. 2.)  The combined effect of these communications, coupled with Plaintiff's demanding $53,000 at the outset of this lawsuit in its unsolicited "settlement offer" (Fox Decl., Ex. 3), demonstrates that Plaintiff came to this Court with one purpose only: to drive up Defendants' litigation costs in order to force a settlement of its unmeritorious claims.  In fact, Plaintiff's threats to "keep suing" and its promise to bring seven more actions have essentially turned Plaintiff into a professional litigant who is now in business of litigating against these Defendants.

## II.   ARGUMENT

### A.   As the Prevailing Parties under the Copyright Act, Defendants Should Be Awarded Their Attorney's Fees.

#### 1.   Applicable Standards

The Copyright Act provides that "the court may … award a reasonable attorney's fee to the prevailing party …."  17 U.S.C. § 505.[6]  "[F]ee awards under § 505 should

---

[6]  The DMCA is part of the Copyright Act.  *See* DIGITAL MILLENNIUM COPYRIGHT ACT, PL 105-304, October 28, 1998, 112 Stat 2860.  Section 505 of the Copyright Act applies to claims brought under the DMCA.  *See Lenz v. Universal Music* (footnote continued)

encourage the types of lawsuits that promote" the Copyright Act's "well settled" objective of "enriching the general public through access to creative works." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204 (2016), quoting *Fogerty v. Fantasy*, 510 U.S. 517, 527 (1994). To that end, "a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious defenses under the statute] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'" *Id.*, quoting *Fogerty*, 510 U.S. at 527; *accord Perfect 10*, 2015 WL 1746484, at *2 ("Under section 505, [p]revailing plaintiffs and prevailing defendants are to be treated alike ....").

"In determining whether, and how extensively, courts should exercise th[eir] discretion, [d]istrict courts should consider, among other things, [1] the degree of success obtained; [2] frivolousness; [3] motivation; [4] objective unreasonableness (both in the factual and legal arguments in the case); and [5] the need in particular circumstances to advance considerations of compensation and deterrence." *Perfect 10*, 2015 WL 1746484, at *2 (second alteration in original), citing *Historical Research v. Carbal*, 80 F.3d 377, 378 n.1 (9th Cir.1996). However, as this Court observed, "each of those factors is merely a guidepost in the exercise of the court's equitable discretion and courts are not limited to considering them." *Perfect 10*, 2015 WL 1746484, at *2, citing *Fogerty*, 94 F.3d at 559. Indeed, as this Court further observed, "[c]ourts have awarded costs for copyright claims based on a single factor ...." *Perfect 10*, 2015 WL 1746484, at *2 (alteration in original). Furthermore, as this Court underscored, "it is important to emphasize that a court's discretion to award attorneys' fees under the Copyright Act is not cabined by a requirement of culpability on the part of the losing party." *Perfect 10*, 2015 WL 1746484, at *3, citing *Fogerty*, 94 F.3d at 555. Indeed, "courts are given wide latitude to award or deny attorneys' fees under the Copyright

*Corp.*, 2010 WL 702466, at *11 (N.D. Cal. Feb. 25, 2010); *Newborn v. Yahoo! Inc.*, 437 F. Supp. 2d 1, 4 n.3 (D.D.C. 2006).

Act, even when a party acted reasonably or in good faith." *Perfect 10*, 2015 WL 1746484, at *3, citing *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997), and *Fogerty*, 94 F.3d at 556 (fee award proper under the Copyright Act despite fact that the "lawsuit was neither frivolous nor prosecuted in bad faith"). "[T]he pivotal criterion" is "[f]aithfulness to the purposes of the Copyright Act …." *Perfect 10*, 2015 WL 1746484, at *3, citing *Fogerty*, 94 F.3d at 558. As "[t]he primary objective of copyright is not to reward the labor of authors, but [t]o promote the Progress of Science and useful Arts," Section 505's "provision for attorneys' fees to prevailing defendants in addition to prevailing plaintiffs recognizes the important role played by copyright defendants in advancing the objectives of the copyright act." *Perfect 10*, 2015 WL 1746484, at *3, citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991), and *Fantasy*, 510 U.S. at 532 n.18. As this Court proceeded to emphasize,

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement .... Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright.

*Perfect 10*, 2015 WL 1746484, at *3, citing *Fantasy*, 510 U.S. at 527.

Additionally, "[t]itle II of the DMCA [also referred to as the Online Copyright Infringement Liability Act] contains a number of measures designed to enlist the cooperation of Internet and other online service providers to combat ongoing copyright infringement." *Rossi*, 391 F.3d at 1003. Thus, "when a copyright owner suspects his copyright is being infringed, he must follow the notice and takedown provisions set forth in § 512(c)(3) of the DMCA." *Id.* As one of the DMCA's purposes is to encourage copyright owners to police their rights, the Ninth Circuit has set the "high bar" for

pleading sufficient "facts" supporting the required "subjective" bad faith in issuing takedown notices under the statute, as "[w]ithout the subjective standard, copyright owners such as [defendant] could face limitless lawsuits just by policing its copyrighted material on the internet." *Ouellette*, 2012 WL 1435703, at \*1-3, citing *Rossi*, 391 F.3d at 1004-05.

As demonstrated below, here all the *Fogerty* factors weigh decisively in favor of awarding Defendants' their fees under the statute.

## 2. Awarding Defendants Their Attorneys' Fees Will Serve the Purposes of the Copyright Act

"When analyzing whether awarding attorneys' fees under the Copyright Act is proper, 'the most important factor...is whether an award will further the purposes of the Act.'" *Microsoft Corp. v. Softwareau.com*, 2016 WL 7647682, at \*4 (C.D. Cal. June 22, 2016) (Birotte Jr., J.), citing *Mattel, Inc. v, Mattel De Mexico S.A. de C.V.*, 705 F.3d 1108, 1111 (9th Cir. 2013). "A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1149 (9th Cir. 2019), citing *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014). Indeed, this aspect of the *Fogerty* analysis recognizes that "[d]eterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both laudible ends." *Perfect 10*, 2015 WL 1746484, at \*12. Where plaintiff, just like Plaintiff here, was "a serial plaintiff operating on a self-proclaimed business model of litigation," this Court found this *Fogerty* factor to weigh decisively in favor of awarding defendants their fees for the successful defense under the statute. *See id.* Indeed, as this Court found, such an award "would discourage serial litigants from bringing unmeritorious suits and then unnecessarily driving up litigation costs in order to drive a settlement. Such a result is entirely consistent with the purpose of the Copyright Act, and this factor weighs in favor of an award of attorneys' fees." *Id.* Here, as Plaintiff's self-proclaimed purpose of

venturing into this Court was to drive up the costs of litigation to force a settlement, and Plaintiff threatens even more baseless litigation now that it has been thrown out of this Court, it is imperative to make it cost-prohibitive for Plaintiff to continue in its vexatious ways. It is only the requested award of Defendants' attorney's fees that could possibly suffice to stop Plaintiff in its tracks.

Moreover, where a party asserts unreasonable or frivolous claims under the statute, "[a]n award of fees … would deter other plaintiffs from bringing [similarly] meritless, objectively unreasonable claims." *Goldberg v. Cameron*, 2011 WL 3515899, at *6 (N.D. Cal. Aug. 11, 2011). Plaintiff's claim here was an epitome of such claims. Plaintiff stated no facts to support of its bold assertions of intentional misconduct under the statute—nor could it, as its refusal to amend in the face of the Court's Rule 11 warning (*see* Dismissal Order at 6) conclusively establishes. In other words, Plaintiff purposefully ignored the Ninth Circuit's "high bar" of the necessary facts required for the claim asserted, and the "high bar" exists to discourage precisely the type of a claim this Plaintiff brought—namely, a claim that discourages copyright owners to police their rights and forces them to face "limitless lawsuits just by policing its copyrighted material on the internet." *Ouellette*, 2012 WL 1435703, at *1-3, citing *Rossi*, 391 F.3d at 1004-05.

As such, Defendants' "defense was the type of defense that furthers the purposes underlying the Copyright Act and therefore should be encouraged through a fee award," *Fogerty*, 94 F.3d at 556, while denying Defendants recovery would undoubtedly frustrate those purposes. This "most important" factor thus confirms that the Motion should be granted.

### 3. The Degree of Success and the Baseless Nature of Plaintiff's Claims Weigh Heavily in Support of the Requested Award

Defendants' success here is complete, since judgment has been entered in their favor on Plaintiff's claim. Further, Defendants "prevailed on the merits rather than on a technical defense, such as the statute of limitations, laches, or the copyright

11

registration requirements," *Fogerty*, 94 F.3d at 556, as this Court found that Plaintiff could not state facts sufficient to allege the required intent element under the statute and defeated causation with its own allegations.   (*See generally* Dismissal Order.) According to this Court, such "unqualified victories" where the claim was "defeated … at the pleading stage" must "weigh[] heavily in support of an award of attorneys' fees under the Copyright Act." *Perfect 10*, 2015 WL 1746484, at *7.   Indeed, according to this Court, "[t]his sort of complete victory on the merits is significant."  *Id.*   In fact, "[t]he extent to which this factor weighs in Defendants' favor would alone support an award of attorneys' fees."  *Id.*, citing, *inter alia*, *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998).   Moreover, in determining the degree of success, the Court also may compare Plaintiff's settlement position with the ultimate result.  *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1247 (W.D. Wash. 2015).   Here, Plaintiff demanded $53,000 and recovered nothing.  (*See* Fox Decl., Ex. 3.)   That further confirms the high degree of success Defendants obtained.

Even if this somehow was not enough, the frivolous and objectively unreasonable nature of Plaintiff's claim further counsels in favor of granting the Motion—although Defendants do not need to make this showing in support of their requested fees, *see Perfect 10*, 2015 WL 1746484, at *9 & 11 (reasoning that "the fact that Perfect 10's copyright claims were not frivolous … does not undermine the Court's ultimate conclusion that attorneys' fees would promote the purpose of the Copyright Act and are appropriate in this case … [because] [a] finding of frivolity is not essential to award attorneys' fees" and also finding determination of objective unreasonableness to be "unnecessary"), citing, *inter alia*, *Mattel*, 705 F.3d at 1111 (denying the plaintiff's attempt to "resurrect the long-rejected requirements of frivolousness and bad faith" for an award of fees under the Copyright Act).   A claim is "frivolous where it lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), or, in other words, it is "clearly baseless …, the result is obvious, or the arguments are

wholly without merit." *Perfect 10*, 2015 WL 1746484, at *8, citing, *inter alia*, *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003).   A claim is objectively unreasonable if the plaintiff "should have known from the outset that its chances of success in the case were slim to none." *Perfect 10*, 2015 WL 1746484, at *11, citing *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).   In addition, "[a] claim that is not 'objectively unreasonable' at the outset can become so if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none." *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 5601853, at *5 (D. Haw. Sept. 23, 2015).

Here, Plaintiff's conclusory allegations that Defendants supposedly issued their takedown notices with the necessary intent under the statute did not even attempt to state any facts in support of these assertions.   In fact, Plaintiff's own allegations demonstrated that its damages did not even have anything to do with Defendants' actions.   Even if Plaintiff and its counsel failed to conduct the pre-filing review required by the applicable rules and were somehow unaware of these defects in Plaintiff's claim, Defendants expressly raised many of those defects with Plaintiff's counsel before they moved to dismiss the complaint. (*See* Ajmera Decl. at ¶ 5.)   Yet Plaintiff still proceeded with its baseless attempt to oppose the requested dismissal, relying on nothing more than its own self-contradictory allegations of causation and relying on clearly distinguishable caselaw as somehow absolving it from its duty to plead sufficient facts in support of the alleged intent under the statute.

As Plaintiff thus failed to plead a viable claim under the Copyright Act and had nothing from the outset to support it, the *Fogerty* factors of frivolousness and objective unreasonableness further cut strongly in favor of awarding Defendants their attorney's fees, even if Defendants' "complete victory" was not in itself sufficient to justify the requested award.

### 4.   The Other *Fogerty* Factors Also Support the Requested Award

The remaining *Fogerty* factors similarly weigh in favor of the requested award.

13

Thus, for example, Plaintiff's own emails "ha[ve] been inconsistent with a party interested in protecting its copyrights," as they demonstrate that Plaintiff "is in the business of litigation, not protecting its copyrights …." *Perfect 10*, 2015 WL 1746484, at *9. The motivation factor thus weighs in favor of awarding the requested fees, since Plaintiff was clearly using its defective claim, coupled with the threat of lengthy and costly litigation, to coerce a settlement—indeed, its recent communications confirm it intends to file more baseless actions to achieve its goals.

Similarly, the compensation factor counsels in favor of the award. Defendants here are both Mr. McCandless, an individual, and his company, and they have been both responsible for paying the attorneys' fees for defending against Plaintiff's claims. (*See* Fox Decl. at ¶ 23.) There is no insurance company involved. As such, Defendants should be compensated for this defense. Moreover, Plaintiff is perfectly capable of bearing the attorney's fees it caused these Defendants to incur. After all, Plaintiff claims that it does business "with internationally notable social media personalities" and derives "profits" from these dealings. (SAC at ¶¶ 7 & 9.)

Finally, and as already noted in the discussion above, the deterrence factor also weighs in favor of the requested award because legally insufficient claims burden the court system, cause potentially damaging negative publicity and force needless attorney's fees on defendants that merely do what the statute encourages them to do— namely, police their rights on the Internet. Awarding attorney's fees here will deter Plaintiff and others from filing claims that cannot even survive a pleading challenge and thus generate the very "limitless" lawsuits that the Ninth Circuit tried to prevent when it established its rigorous pleading requirements under the DMCA. *See Rossi*, 391 F.3d at 1004-05.

Accordingly, "[h]aving weighed all of the various *Fogerty* factors, as well as the other factors articulated by the Ninth Circuit and the totality of the other circumstances in this action," the Court should find, just like it did in *Perfect 10*, that "an award of attorneys' fees in this action would promote the purposes of the Copyright Act" and

14

"exercise[] its discretion to award Defendants (as the prevailing parties in this action) a reasonable attorney's fee for the costs of reasonably defending against [Plaintiff]'s copyright claims." *Perfect 10*, 2015 WL 1746484, at *13, citing 17 U.S.C. § 505.

### B.    The Amount of the Requested Fees is Reasonable.

Although district courts enjoy "wide discretion in determining the reasonableness of an attorney's fees," the court begins from the premise that "[a]ttorney's fees are based on the 'lodestar' calculation." *Brighton Collectibles, Inc. v. RK Texas Leather Mfg*., 2014 WL 5438532, at *3 (S.D. Cal. Oct. 24, 2014).  "When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc*., 6 F.3d 614, 622 (9th Cir. 1993).  "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Indeed, the lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Intel*, 6 F.3d at 622.  Id. To establish this "presumptively reasonable lodestar figure," the party seeking fees may "provide (1) contemporaneous billing records, (2) counsel's hourly rate, and (3) evidence that this rate is reasonable for an attorney of like skill and experience." *Discovery Communications, Inc., v. Animal Planet, Inc*., 172 F. Supp. 2d 1282, 1292 (C.D. Cal. 2001).

As for "the number of hours reasonably expended on the litigation," *Intel*, 6 F.3d at 622, in the last nine months since Plaintiff initiated the action at bar, Defendants' counsel has expended more than 190 hours (without accounting for the fees that are still to be spent on reviewing the eventual opposition to this Motion, preparing Defendants' reply in support of the Motion, and preparing for and attending oral argument on the Motion, if any).  That time, which is detailed in the contemporaneous billing records attached to Mr. Fox's declaration, includes, for example, continues meet and confer efforts to dwindle down Plaintiff's baseless claims, preparing the eventual motion to

15

dismiss papers, reviewing Plaintiff's opposition papers and the authorities cited therein, and preparing Defendants' reply papers.   (*See* Fox Decl. at ¶¶ 19-26 & Ex. 1.) Defendants respectfully submit that the hours spent in the last nine months reflect the efficient defense against Plaintiff's claims and are reasonable.

As for the reasonableness of counsel's hourly rate, Defendants' counsel charged $500 for Mr. Fox's work, which was limited to a couple of supervisory entries, and $400 for the other three attorneys that billed on the case.   These rates are actually below "those prevailing in the community for similar services," *Intel*, 6 F.3d at 622, since Mr. Fox is the preeminent trial lawyer and the managing partner of the firm with over 37 years' experience in copyright and entertainment litigation (*see* Fox Decl. at ¶¶ 11-12), while the other billing attorneys command extensive seniority and impressive credentials (*see id*. at ¶¶ 13-15; *see also* Bogorad Decl. at ¶ 5, and Ajmera Decl. at ¶ 3). In this District, practitioners at Mr. Fox's level of experience routinely charge from over $500 per hour to well over $800 per hour.   (*See* Fox Decl. at ¶ 17.)   Similarly, Ms. Bogorad is a partner with over twenty years of experience, which places her rate of $400 well below the market, while Ms. Ajmera, who is a senior associate with over eight years of experience, and Mr. Burrell, who is a midlevel associate with impeccable credentials, both bill at $400, which is within the prevailing rates in this District.  *See Perfect 10*, 2015 WL 1746484, at *19 (surveying the relevant evidence and confirming that "attorney rates ranging from $390 per hour to $1,002.96 per hour were reasonable for the Los Angeles area").   (*See also* Fox Decl. at ¶ 18.)

Since the resulting $82,486.40 in fees sought is the result of multiplying the hours reasonably spent on successfully defending Defendants in this action by the hourly rates that are comfortably within (or even below) the prevailing rates in this District, this amount is the "presumptively reasonable lodestar figure."  *Intel*, 6 F.3d at 622.

Finally, "the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Actors Guild, Inc*. 526 F. 2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation."   *Intel*,

6 F.3d at 622. The *Kerr* factors include "the time and labor required" and "the preclusion of other employment due to acceptance of the case," as well as "the results obtained" and "the customary fee." *Id.*

Here, the result obtained is the complete dismissal of the action at the pleading stage, thus avoiding the substantial attorney's fees of further litigation, as well as the extensive fees associated with expert discovery.  As for the customary fee, counsel charged fees that are either below or well within the customary rate in the community for attorneys with comparable experience in the field.  Moreover, Defendants are represented by a boutique litigation shop with fewer than 10 attorneys.  Accordingly, the undersigned counsel is very selective with the cases they accept, as they can only take on a limited number of cases due to the firm's specialized nature.  Indeed, a firm of this size has limitations in the expendable attorneys hours.  Under *Kerr*, this further counsel against any possible adjustments.

Accordingly, the *Kerr* factors further confirm that the requested fee award is reasonable and, indeed, Defendants would be well within their rights to request an enhancement under *Kerr*.

## C.   Alternatively, Plaintiff's Baseless Venture to This Court is Sanctionable.

This court has the inherent authority to issue sanctions for bad faith litigation conduct designed to, among other things, vexatiously multiply proceedings without any proper basis for doing so.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 41-42 & 50 (1991); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) ("Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct (1) Federal Rule of Civil Procedure 11 ... (2) 28 U.S.C. § 1927 ... and (3) the court's inherent power."); *see also* 28 U.S.C. § 1927 (empowering courts to sanction attorneys for multiplying proceedings "unreasonably and vexatiously").  Indeed, "a district court's power to sanction attorneys is derived from a court's inherent power to maintain order and preserve the dignity of the court and from the legislative grant of authority to

17

promulgate rules." *Disney Enterprises, Inc. v. VidAngel Inc*., 2017 WL 6819882, at *2 (C.D. Cal. Oct. 5, 2017) (Birotte Jr., J.); *see also Fink*, 239 F.3d at 991 (discussing "the federal courts' inherent power to levy sanctions, including attorneys' fees, … when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"), citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980).  In addition to the Court's inherent powers, Local Rules 11-9 and 83-7 enable it to award sanctions for "frivolous" opposition briefs.  *Disney Enterprises*, 2017 WL 6819882, at *3 (observing that "if a court finds that the parties' conduct rises to a level of bad faith, it may impose sanctions under Local Rules 11-9 and 83-7 and its inherent power").  The Ninth Circuit has defined a "frivolous" filing as one "that is *both* baseless *and* made without a reasonable and competent inquiry."  *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (original emphasis).

To impose sanctions pursuant to this Court's inherent power or under Section 1927, the Court must make the express finding that the litigant's and/or his counsel's conduct at issue involved "bad faith, which includes a broad range of willful improper conduct."  *Fink*, 239 F.3d at 992 (discussing sanctions under courts' inherent powers); *see also Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015) (same requirements for sanctions under Section 1927).  This includes conduct that is neither frivolous nor meritless—thus, for example, the *Fink* court discussed intentional conduct designed "to gain an advantage in the other case, which we concluded was sufficient to support a finding of bad faith." *Fink*, 239 F.3d at 992, citing *In re Itel Sec. Litig*., 791 F.2d 672, 675 (9th Cir. 1986).  Indeed, "[f]or purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Fink*, 239 F.3d at 992, citing *Intel Sec*., 791 F.2d at 675; *see also Chambers*, 501 U.S. at 44-45 (imposing attorney's fees as a sanction "serv[es] the dual purpose of 'vindicat[ing]

18

judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy").  Still, "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994.  Thus, the required "[s]ubjective bad faith ... is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002); *see also In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) ("a finding that …. [counsel] recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is … sufficient to impose sanctions under § 1927"); *accord B.K.B. v. Maui Police Dept*., 276 F.3d 1091, 1107 (9th Cir. 2002) ("[R]ecklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions.").

Specifically, it has been held that both Section 1927 and inherent power sanctions are appropriate where Plaintiff unreasonably delays dismissal of his frivolous claims. *See Stone Creek, Inc. v. Omnia Italian Design, Inc*., 875 F.3d 426, 443-44 (9th Cir. 2017) (upholding the district court's imposition of 28 U.S.C. § 1927 sanctions where "with knowledge that its ... claim was meritless, [the plaintiff] failed to withdraw the claim and opposed [the defendant's] motion to strike the claim"); *China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc*., 2003 WL 21982477, at *14 (C.D. Cal. Mar. 12, 2003) (sanctions under inherent powers for raising frivolous arguments to oppose a motion to dismiss); *cf. Cook-Benjamin v. MHM Corr. Servs., Inc.*, 571 F. App'x 944, 949 (11th Cir. 2014) (affirming award of sanctions under Section 1927 because "counsel's steadfast refusal to drop these claims until the response to the defendants' summary judgment motion unnecessarily and unreasonably multiplied the litigation"); *Operating Eng'rs Pension Trust v. G.C. Wallace, Inc.*, 159 F.R.D. 536, 541 (D. Nev. 1994) (awarding sanctions under Section 1927 where "Plaintiffs should have known, before they filed their Opposition to the Motion for Summary Judgment, that they had

19

no cause to seek further prosecution of this action").  Similarly, courts found sanctions to be warranted where counsel persisted with meritless amendments even where "it was absolutely clear, at least by the time the amended complaint was filed, that the plaintiff's claims had no merit.  Borrowing the language from the Second Circuit … , I 'cannot believe that an attorney who prepares [an amended complaint and motion papers] in such a careless, casual and offhand manner can in good faith believe that he presents claims to this Court that have a scintilla of legal merit."  *Prim v. Peatco Ltd. L.P.*, 1994 WL 570754, at *6 (S.D.N.Y. Oct. 17, 1994) (original alteration), citing *Mone v. Comm'r*, 774 F.2d 570, 575 (2d Cir. 1985), and *Levine v. F.D.I.C.*, 2 F.3d 476, 479 (2d Cir. 1993) (attorney's blatant disregard of facts warranted imposition of sanction under Section 1927).

Plaintiff and its counsel came to this Court asserting claims they knew have been already litigated and decided, as well as state law claims that, as "even the most cursory legal inquiry would have revealed," *Holgate*, 425 F.3d at 677, were preempted by the very federal statute that brought Plaintiff to this Court in the first place (and were also inactionable under the California anti-SLAPP statute).  Indeed, Plaintiff's decision to voluntarily dismiss all of its initially asserted state law claims, notably undertaken only *after* Defendants expended efforts to meet and confer with Plaintiff, is evidence in itself that the claims were indeed baseless to begin with.  *See R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, 2014 WL 4722487, at *6 (D. Ariz. Sept. 23, 2014) (finding "voluntary withdrawal of the claim to be evidence of the claim's legal or factual weakness"); *cf. Smith & Green Corp. v. Trustees of Const. Indus. & Laborers Health & Welfare Tr.*, 244 F. Supp. 2d 1098, 1107 (D. Nev. 2003) (imposing sanctions where plaintiff brought state law claims clearly preempted by federal law).[7]  Yet Plaintiff and

---

[7]   It also shows unreasonable overpleading in the first place, which is also sanctionable conduct.  *See, e.g., Hicks v. Arthur*, 891 F. Supp. 213, 215 (E.D. Pa. 1995), *aff'd*, 91 F.3d 123 (3d Cir. 1996). As the *Hicks* court concluded in similar circumstances, "[w]e (footnote continued)

20

1   its counsel kept on amending, while Plaintiff kept sending Defendants threatening

2   communications, which clearly demonstrate that Plaintiff regarded the case at bar as a

3   mere leverage tool and did not take it seriously, posing that it could easily abandon it in

4   favor of filing seven more actions back in small claims court.  (*See* Dkt. No. 43-2.)  If

5   this is not vexatious intent, nothing will ever be.

6         In this context, Plaintiff's opposition to Defendants' motion to dismiss is not only

7   sanctionable as further vexatious multiplication of proceedings but also as a frivolous

8   filing under Local Rules 11-9 and 83-7.  It was clear that Plaintiff had no factual

9   allegations to assert the required subjective intent under the DCMA; moreover, its own

10   allegations made it clear that the was no causal link between the purported takedown

11   notices and Plaintiff's ban from Reddit.  (*See generally* Dkt. No. 35.)  Yet the opposition

12   defended the claim anyway (*see* Dkt. No. 44), making baseless assertions that just

13   because Plaintiff pleaded causation, it must be true—even though Plaintiff also included

14   links in its complaint that conclusively disproved any such causation), and relying on

15   cases dealing with automatically generated takedown notices, which clearly had nothing

16   to do with Defendants and the necessity to state sufficient facts to meet Ninth Circuit's

17   "high bar" of pleading the required intent under the DMCA.  (*See generally* Dkt. No.

18   46.)

19         "Had counsel conducted any meaningful research, he would have—and indeed

20   should have—discovered" not only that Plaintiff had no state law claims but also that it

21   had no facts to assert a DMCA claim.  *Cook-Benjamin*, 571 F. App'x at 949.  On this

22   basis, the conduct here is the kind that combines improper purpose with frivolousness,

23

---

24   find that this massive over-pleading was done vexatiously and to multiply the

25   proceedings."  *Id.*, citing, *inter alia*, *Chalfy v. Turoff*, 804 F.2d 20, 23 (2d Cir. 1986)

26   (concluding that the overpleading at issue demonstrated that plaintiff "did not attempt

26   seriously to weigh the merits of their various claims under section 1983 or the United

27   States Constitution"), and *Quiroga v. Hasbro, Inc*., 934 F.2d 497, 503 (3d Cir. 1991)

27   ("attorney 'tried to force plaintiff's various grievances into the framework of various

28   state and federal causes of action'").

which makes it sanctionable. *See Disney Enterprises*, 2017 WL 6819882, at *3 (finding bad faith and imposing sanctions for knowingly frivolous filings, as they were "both baseless and made without a reasonable and competent inquiry"); *Great Dynasty Int'l Fin. Holdings Ltd. v. Haiting Li*, 2014 WL 3381416, at *6-7 & 10-11 (N.D. Cal. July 10, 2014) (finding bad faith and awarding sanctions pursuant to the court's inherent authority, as "[c]ounsel's conduct was reckless and frivolous because a reasonable and competent inquiry into the law would have revealed," *inter alia*, that the claims were meritless, and the award of sanctions "would both vindicate the Court's judicial authority while also make Defendants whole for expenses incurred to defend the frivolous claims").

## III.  CONCLUSION

Defendants prevailed on the merits, all the *Fogerty* factors cut in favor of the award of attorney's fees, and this is a quintessential case where the successful defense under the Copyright Act has furthered the purposes of the statute.  Moreover, the attorney's fees incurred and sought are reasonable.  Accordingly, Defendants respectfully submit that the Motion should be granted.  Alternatively, the Court should impose sanctions in the amount of the aforementioned attorney's fees for Plaintiff and its counsel's bad faith litigation conduct as described herein.

DATED: May 6, 2022                            GERARD FOX LAW P.C.


                                              /s/ *Marina V. Bogorad*
                                              GERARD P. FOX
                                              MARINA V. BOGORAD

                                              Attorneys for Defendants